Bayley vs. Anderson and another, imp.

Bayley, Respondent, vs. Anderson and another, imp., Appellants.

*March 7 — March 27, 1888.*

Contracts: Sale of chattels: When title passes.

Plaintiff agreed to furnish to T., a contractor, the iron work for certain buildings, according to the plans and specifications of the architect. The specifications were a part of the contract for the construction of the buildings, and provided that all materials used should be subject to the approval of the architect and superintendent. The contract provided that T. should be paid for his work as, it progressed, at a certain rate, upon estimates made by the superintendent, but that no material should be estimated or paid for until used in the permanent construction of the buildings. After the buildings were partly constructed, the contract was declared forfeited for nonperformance, and the defendants entered into a contract to complete the buildings. Certain iron beams which had theretofore been furnished by plaintiff to T., but which had not been accepted or approved by the superintendent, were used by the defendants in completing the buildings, and were then accepted, and the defendants were paid therefor. *Held*, that the specifications of the original building contract became a part of the agreement between the plaintiff and T.; that the title to the iron work remained in the plaintiff until the same was used in the building and accepted; and that the defendants are therefore liable to the plaintiff for the beams used by them.

APPEAL from the Circuit Court for *Dane* County.

Action to recover the value of twenty-nine iron beams. alleged to have been sold and delivered by the plaintiff to the defendants and to have been used by them in and about the construction of a chemical laboratory building for the University of Wisconsin. The defendant Trumbull had, in June, 1885, taken the contract to erect such laboratory and other buildings for the university; and the plaintiff had made to him the following proposition, which he had accepted: "June 25, 1885. We will furnish the iron work for the boiler-house, laboratory, and machine-shop, accord-

ing to the plans and specifications by H. C. Koch & Co., for the sum of $2,850. Yours respectfully, WILLIAM BAYLEY & Co." . The provisions of the contract between Trumbull and the regents of the university are sufficiently stated in the opinion. In January, 1886, the regents declared that contract forfeited by reason of Trumbull's failure to perform. The buildings were then partially constructed. The defendants *Anderson* and *Littlejohn*, who had been the sureties on Trumbull's contract, on January 29, 1886, jointly with said Trumbull, entered into a new contract with the regents, by the terms of which they were to complete the buildings according to the original contract with Trumbull, with certain exceptions as to time, etc., not important here.

The twenty-nine iron beams mentioned in the complaint had been delivered by the plaintiff to Trumbull in the fall of 1885, but it appeared that only ten of them had actually been wrought into the building prior to January 29, 1886. The remaining nineteen were used by the defendants in completing the laboratory after that date.

The cause was tried by the court without a jury. The court found as facts that the allegations of the complaint were true except as to ten of the iron beams mentioned therein, and as a conclusion of law, in effect, that the defendants were indebted to the plaintiff for the nineteen beams used by them in completing the building. From the judgment entered accordingly the defendants *Anderson* and *Littlejohn* appealed.

For the appellants there was a brief by *Pinney & Sanborn*, and oral argument by *Mr. A. L. Sanborn.* They contended that the title to the beams passed to Trumbull when they were delivered to him by the plaintiff. Benj. on Sales, secs. 315 *et seq.*, 360; *Goddard v. Binney*, 115 Mass. 450; *Merchants' Nat. Bank v. Bangs*, 102 id. 291; *Hayden v. Demets*, 53 N. Y. 426; *Hunter v. Wetsell*, 84 id. 549; Blackburn on Sales, 128; *Wigton v. Bowley*, 130 Mass. 254; *Pratt*

*v. Peck*, 70 Wis. 620; *Dunning v. Gordon*, 4 U. C. Q. B. 399. The fact that the contract for the beams was " according to the plans and specifications " can have no effect upon the passing of the title. It is merely a warranty on the part of the plaintiff that the iron shall answer the specifications, for the breach of which Trumbull might have either claimed damages or rescinded the contract and returned the beams. *Woodle v. Whitney*, 23 Wis. 55; *Fisk v. Tank*, 12 id. 303; *Boothby v. Scales*, 27 id. 637, and cases cited; *Gammon v. Abrams*, 53 id. 323; *Bryant v. Isburgh*, 13 Gray, 607; *Fairfield v. Madison Mfg. Co.* 38 Wis. 346; *Hunt v. Wyman*, 100 Mass. 198; *Wilkinson v. Hoffman*, 61 Wis. 637.

*H. W. Chynoweth*, for the respondent, argued that the original contract between Trumbull and the regents became a part of the plaintiff's contract. *Price v. Garland*, 6 Pac. Rep. (New Mex.), 474; *Dawes v. Powers*, 5 Mont. 59; *Denver & N. O. Const. Co. v. Stout*, 8 Colo. 61. The contract of the defendants was a continuation of that of Trumbull; an assumption by them of all the obligations imposed upon Trumbull and all of the conditions. The sale of the iron under the contracts in question was a sale subject to approval, and the title was not to pass or the plaintiff to be paid until the iron was actually wrought into the building and accepted.

COLE, C. J. In the proposal of the plaintiff made to Trumbull, he agreed to furnish the iron-work for the buildings named, according to the " plans and specifications " of the architect. The specifications referred to were a part of the original contract between Trumbull and the regents of the university, and required that all the materials used in the construction of the building should be of the best quality of their respective kinds, subject to the approval of the architect and superintendent. The contractor was to be

paid for his work as it progressed, at a specified rate, upon estimates made by the superintendent, but the contract provided that no material was to be estimated or be paid for until used in the permanent construction of the building. It was one of the duties of the superintendent to decide upon the fitness of all materials used; and the work done was to be to his entire satisfaction, without reference to any other person.  We think these plans and specifications of the original contract became a part of the contract between the plaintiff and Trumbull, and that the parties contracted with reference to them.  These facts are material as bearing upon the question discussed as to when the title passed of the iron beams in controversy. The learned counsel for the defendants claims that the title to them passed as soon as they were delivered on the university grounds and Trumbull had an opportunity to inspect them; consequently, that they were Trumbull's property when the supplemental contract for completing the building was entered into by the defendants.  On the other hand, it is insisted that the sale of the beams, under the contract, was subject to the approval of the superintendent, and they did not become the contractor's property until such approval was had; that, in fact, the beams were not actually wrought into the building and accepted by the superintendent, either expressly or impliedly, before the defendants entered into the contract of January 29, 1886.  Therefore, it is said, the beams were not the property of Trumbull, and he could not have transferred them to the defendants even if he had attempted to do so.  We are inclined to adopt this view of the transaction.

There can be no doubt but parties may make a valid sale of an article dependent upon the approval of another person; in such case there is no absolute sale until the approval is given.  This is familiar law.  Here the contracts clearly provide that the iron beams furnished by the plaint-

iff were to be subject to the approval of the superintendent, and the evidence shows that the superintendent did not accept or approve of them until they were wrought into the building. The superintendent did not even examine them while they were lying on the ground, and did nothing, in fact, in respect to them, which could be deemed an approval. The sale was a conditional one in the strict sense of the term; the vendee was not bound to pay for the beams unless the superintendent was satisfied with them. See *Exhaust Ventilator Co. v. C., M. & St. Paul R. Co.* 66 Wis. 218. The superintendent had the right to reject the beams even after they were placed in the building, if they did not answer the contract. But when the beams were permanently wrought into the building, and the superintendent made estimates for them, this should be deemed an acceptance and approval. Until that was done, the property was in the plaintiff and at his risk. The defendants entered into a contract to complete the building after the regents declared the Trumbull contract forfeited by reason of his failure to perform. The nineteen beams, for the value of which a recovery was had, were then upon the ground. They were used in the building by the defendants, were accepted by the superintendent, and the defendants were paid for them. They seek to avoid liability to the plaintiff on the ground that by the sale the property passed to Trumbull, and that he alone is responsible for it. The court below, in effect, decided that, as these beams were used by the defendants in and about the construction and completion of the building, they were liable to the plaintiff for their value. We think that view is correct, and the judgment is therefore affirmed.

*By the Court.*— Judgment affirmed.